A. RAYMOND JONES AND MARY LOU JONES, HUSBAND AND WIFE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 47762, 47763. Filed February 29, 1956.

*Wentworth T. Durant, Esq.*, for the petitioners.
*Frank C. Allen, Esq.*, for the respondent.

**OPINION.**

MURDOCK, *Judge:* The construction of the concrete driveway was not a "repair" of the old unsatisfactory driveway but was a completely new installation, a better driveway, having a greater value and having a different useful life. The cost thereof was a capital expenditure and not a deductible expense. The evidence fails to show what other construction work, if any, was done by the contractor in 1948 for the $3,000 payment; therefore the Commissioner's failure to allow the entire amount as a deduction is sustained.

Raymond decided in 1949 to demolish a small warehouse in order to make way for the construction of a new building or buildings. He had used the warehouse for some time prior thereto for the storage of tools and parts. The adjusted basis of the warehouse is not deductible from income of 1949 under such circumstances but must be added as a part of the cost of the new asset constructed in its place. *Estate of Edgar S. Appleby*, 41 B. T. A. 18, affd. 123 F. 2d 700; *Henry Phipps Estates*, 5 T. C. 964.

The petitioners contend that they are entitled to deduct for 1950 on a cash basis $17,474.71, the cost in that year of the surplus castings on hand at the end of the year on which no work had been done by the machine shop. Raymond apparently had never purchased the castings prior to 1950. He purchased them merely to aid his customer, perhaps as an agent, and was to be repaid the cost by the customer when he delivered a finished valve. He included the cost of each casting to him in billing Kinney for the work done on similar castings during 1950 and was reimbursed by Kinney. That method was a satisfactory one for income tax purposes, and if carried out in later years would return to Raymond the full cost of all castings purchased by him, including those on hand at the end of 1950. He cannot deduct, under that method, the cost of the surplus castings on hand at the end of the year. This relatively large cost may be a capital expenditure to

be subtracted from the amount realized in the later sale of the item. The purchase of those castings has not been shown to be an ordinary and necessary expense of his business, at least under his method of accounting, and the recovery of his cost must wait until he sells those items to his customer in later years, or otherwise disposes of them.

The taxpayers claim that they are entitled to a net operating loss deduction for 1948 based on a net operating loss carryover from 1947. See secs. 23 (s) and 122 (1939 Code). The Commissioner, in determining the deficiency for 1948, did not allow any such deduction, and the taxpayers have the burden to establish their right to it, including the amount. *B. Estes Vaughan*, 15 B. T. A. 596, also 17 B. T. A. 620; *H. B. Moore*, 8 B. T. A. 749. The only evidence offered herein to show the amount of the alleged deduction and the net operating loss on which it was based consists of the returns of the taxpayers for the years 1943 through 1947. The Commissioner did not accept the figures shown on the returns for 1945 and 1946 but determined deficiencies for those years. Obviously the returns are inadequate to sustain the petitioners' burden of proof in this case. *H. B. Moore, supra*. Furthermore, the petitioners introduced into evidence a memorandum of an agreement whereby their tax liability for 1945 was settled. It was agreed, as a part of that settlement, that whatever net operating losses there might have been for the years 1943, 1944, and 1947 would be consumed in offsetting 1945 income. The evidence also shows that the Commissioner levied on a bank account in order to collect a part of the deficiency which he determined for 1946. Thus there could be no carryover of any 1947 net loss to 1948. The petitioners have failed to prove that they are entitled to a net operating loss deduction for 1948.

The Commissioner has the burden of proving by clear and convincing evidence that a part of the deficiency for each year was due to fraud with intent to evade tax. The taxpayers were fully aware of their legal duty to file income tax returns for the years 1948, 1949, and 1950. The independent accounting firm which was employed by Raymond in connection with his business actually filled in an income tax form on behalf of the petitioners for each of those years and delivered those prepared documents to Raymond after the close of each of the taxable years in time to permit the taxpayers to sign and file those documents as their returns for the taxable years. The taxpayers deliberately refrained from executing and filing those forms as their returns. The documents prepared for the years 1948 and 1949, which were introduced into evidence, show substantial amounts of income for each of those years. The one prepared for 1950 showed a loss and no tax due. The evidence shows that the reason for the failure to file the documents was that Raymond did not want to use

his money or have it taken to pay the taxes which the returns would show to be due, because he chose to use his money instead for other purposes, including the expansion of his business in some or all of the taxable years. Raymond borrowed $45,000 from a bank in April 1949 and stated in the application that $27,000 thereof was needed to pay his 1948 income taxes. The taxes shown on the prepared form amounted to approximately that amount but were never paid. He made payments of $32,086 in 1948 and 1949 on a home which he was purchasing.

It is thus clear that the failure to file the returns for 1948 and 1949 was due to a fraudulent purpose. The information shown on the prepared forms was necessary or at least would have been helpful to the Government in determining the tax. That information was deliberately withheld to avoid the payment of tax, and known provisions of the law were unjustifiably disregarded with a fraudulent intent. The record as a whole sustains the Commissioner's burden of proving that a part of the deficiency for each of the years 1948 and 1949 was due to fraud with intent to evade tax.

The situation with regard to 1950 is a little different. The form prepared by the accountant for that year and delivered to Raymond showed a small loss and no tax due, so that if Raymond looked at it he would have known he could have signed and filed that document as the 1950 return without any apparent tax liability. The figures which the Commissioner used in determining the deficiency for 1950 parallel those of the accountant as shown on the form which he prepared for 1950, with only two important exceptions. One was that the accountant proposed to deduct the $17,474.71 paid for surplus rough castings as an expense of the business, whereas the Commissioner did not regard it as a deductible item. The other was that the accountant's detailed figures for depreciation arrived at a proposed deduction of $59,079.54, whereas the Commissioner computed a deduction for depreciation of only $20,200.16. If the prepared document had been actually filed, those adjustments would not be clear and convincing proof of fraud. The Commissioner has failed to show that the petitioners were not aware of the fact that the document prepared by their accountant for their signature as their 1950 return showed no tax due. The record as a whole fails to show convincingly and clearly that a part of the deficiency for 1950 was due to fraud with intent to evade tax.

The Court and counsel for the Commissioner were clearly of the opinion at the conclusion of the trial that the petitioners were not contesting the additions to the tax under sections 291 (a), 294 (d) (1) (A), and 294 (d) (2). However, the taxpayers in their briefs have argued that the imposition of these additions was improper, and in

view of all of the circumstances the Court has given consideration to and has decided those issues. The taxpayers did not file any income tax returns for 1948, 1949, and 1950 or declarations of estimated tax for 1949 and 1950. They made no current payments during those years. It has already been pointed out that the failure to file required returns for 1948, 1949, and 1950 was deliberate. The record as a whole fails to show that there was reasonable cause for the failure to file the declarations of estimated tax. Even a lack of funds does not constitute reasonable cause. *Leo Sanders*, 21 T. C. 1012, affd. 225 F. 2d 629. Raymond claimed that he intended to file the returns and pay the tax as soon as the Government paid him for work which he had done for it. That would not be reasonable cause, and furthermore, he did not file the returns and pay the tax when the Government did pay him. He entered a plea of nolo contendere to a criminal indictment for willfully failing to file returns. The record shows affirmatively that his failure to file the returns in question, which subjected him to the additions to the tax under sections 291 (a), 294 (d) (1) (A), and 294 (d) (2), was due to willful neglect, or worse, and was not due to reasonable cause.

*Decisions will be entered under Rule 50.*