Donald D. Stutsman v. Commissioner.
Stutsman v. Commissioner
Docket No. 74023.
United States Tax Court
T.C. Memo 1961-109; 1961 Tax Ct. Memo LEXIS 243; 20 T.C.M. (CCH) 541; T.C.M. (RIA) 61109; April 14, 1961
Byron F. White, Esq., Bank of America Bldg., San Diego, Calif., for the petitioner. Edward M. Fox, Esq., for the respondent. TRAIN
Memorandum Findings of Fact and Opinion TRAIN, Judge: Respondent determined deficiencies in petitioner's income tax and additions to tax for the calendar years and in the amounts as follows: Additions to Tax
Section
Section
Year
Deficiency
294(d)(1)(A)
294(d)(2)
1952
0
$ 2.16
$ 1.44
1953
0
110.30
73.53
1954
$828.95
76.67
49.74
1955
665.00
0
0
The issues for decision are as follows: (1) Whether petitioner incurred net operating losses in the years 1949 and 1950 which would be available as carryovers against his net income for subsequent years; and
*244 (2) Whether the petitioner is liable for additions to tax for the years 1952, 1953, and 1954, pursuant to the provisions of section 294(d)(1)(A) of the Internal Revenue Code of 1939. Findings of Fact Some of the facts are stipulated and are hereby found as stipulated. The petitioner, Donald D. Stutsman (hereinafter referred to as Stutsman) filed a timely Federal income tax return for the year 1951 with the collector of internal revenue for the sixth district of California. Petitioner filed timely Federal income tax returns for the years 1952, 1953, 1954 and 1955 with the district director of internal revenue for the district of Los Angeles, California. On March 15, 1955, petitioner filed original Federal income tax returns for the years 1949 and 1950 and amended Federal income tax returns for the years 1951, 1952, and 1953, with the district director of internal revenue for the district of Los Angeles, California. For about four years prior to 1938, Stutsman had been in the business of raising turkeys in Iowa. His operation began to expand, and in 1938 he purchased a 227-acre farm for $7,800 to accommodate the increased operation. In about 1945, Stutsman entered into a partnership, *245 known as the Corn Belt Turkey Farms (hereinafter referred to as Corn Belt), with two men from Chicago, Illinois, for the purpose of operating a wholesale turkey processing business to be located on the same farm on which petitioner conducted his personal turkey-raising operations. The operation of Corn Belt involved the purchase, dressing, packaging, freezing and shipping of turkeys to eastern and midwestern markets. In 1948, the petitioner began negotiations with the other partners to purchase their interest in the partnership. The negotiations were completed in October 1949 when petitioner paid the final $10,000 of the purchase price. Thereafter and until June 21, 1950, the turkey-raising operation and the processing plant were operated by petitioner as sole proprietorships. On June 21, 1950, petitioner executed a trust agreement under the terms of which he turned over all the assets of both businesses to a creditors' trust. At the time he turned over the assets of the businesses to the creditors' trust, petitioner also turned over the books and records of both businesses to the trustees. Subsequent to June 21, 1950, petitioner has had no connection with the operation of the two *246 businesses; he has paid none of the expenses and shared none of the profits, if any. On January 3, 1951, petitioner left the State of Iowa and moved to California. On his Federal income tax returns for the years 1949 and 1950, petitioner showed the following profits and losses: Profit
Source
Year
or (Loss)
Corn Belt Turkey Farms
8-1-49 to 12-31-49
$ 15,530.82
Donald D. Stutsman Farm
1-1-49 to 12-31-49
(49,617.60)
Corn Belt Turkey Farms
1-1-50 to 12-31-50
37,265.62
Donald D. Stutsman Farm
1-1-50 to 12-31-50
(119,082.26)
On his amended Federal income tax returns for the years 1952 through 1955, inclusive, petitioner carried over the net operating losses reported on his returns for the years 1949 and 1950, which were disallowed by the Commissioner for lack of substantiation. The petitioner failed to file declarations of estimated tax for the years 1952, 1953 and 1954. This failure was due to willful neglect and was without reasonable cause. Opinion Issue 1 The parties have stipulated that the petitioner deducted contributions in the amount of $16 as an expense of his business and improperly included as income the amount of $1,116.87. *247 Respondent concedes that he improperly determined the additions to tax under the provisions of section 294(d)(2) of the Internal Revenue Code of 1939. These concessions will be taken into account under a Rule 50 computation. The respondent disallowed certain net operating loss carryovers for the years 1952 through 1955, inclusive, and claims that the petitioner has not substantiated the net operating losses reported in 1949 and 1950 which gave rise to the carryovers. The burden of proving the existence of a net operating loss deduction is on the taxpayer. United States v. Olympic Radio & Television, 349 U.S. 232 (1955); A. Raymond Jones, 25 T.C. 1100 (1956), modified on other grounds 259 F. 2d 300 (C.A. 5, 1958); B. Estes Vaughan, 15 B.T.A. 596 (1929); H. B. Moore, 8 B.T.A. 749 (1927). Petitioner was hampered in the presentation of his case because he was unable to produce at the trial the original books and records of his businesses. He did offer a trial balance dated April 30, 1950, which showed an account, Donald D. Stutsman, Personal, which he testified contained the operating results of his farm operations but *248 also contained his personal withdrawals. This account had a negative balance of $72,705.94. Even if we were to assume that this was the amount of the loss sustained by petitioner, his position is not aided because there is nothing to show to what period of time this amount is attributable. Furthermore, the trial balance as of April 30, 1950, is not even complete as of that date. Petitioner also introduced a trustee's report dated February 24, 1950. This report contained a trial because as of December 31, 1950, which showed the balance of Donald D. Stutsman, Personal, to be $168,699.86. Petitioner testified that this figure represented the operating results of his farm operations, but it also contained his personal withdrawals. This is the combined total of the losses which petitioner alleges he sustained in 1949 and 1950. The report covers the operating period from August 1, 1949 to December 31, 1950; however, it is impossible to determine the amount of losses allocable to any one period of time. It is noted that this report covers a period of time after which petitioner had no further connection with the business. Petitioner also introduced his Federal income tax returns for the *249 years 1949 and 1950 showing the purported losses. Petitioner has not satisfied his burden of proof merely by introducing his tax returns for the years in question. A. Raymond Jones, supra; H. B. Moore, supra. Not only the petitioner failed to prove the amount of losses sustained in 1949 and 1950, but he has failed to show that these purported losses were first carried back to prior years before being carried forward. In computing the amount of a net operating loss carryback or carryover to any taxable year other than the first year to which the loss may be carried, section 122(b) of the 1939 Code requires that the loss be reduced by the excess of the amount of the loss over the sum of the taxable income, computed with the adjustments listed in section 122(d) for each of the prior taxable years to which the loss could be carried. This requirement is applicable even though the taxpayer did not first carry back his loss to prior years. In line with the requirements of section 122(b), in order to carry his burden of proving his right to a net operating loss deduction, the taxpayer must show that this section has been complied with. This the petitioner has *250 failed to do. There is no evidence other than the partnership tax return for 1948 of the income or loss sustained by petitioner in 1947 and 1948 which is not enough to carry his burden of proof. From the record in this case, we know that the petitioner operated two businesses, a turkey processing plant and a turkeyraising operation, and that the former business was apparently profitable while the latter business apparently was not. Although the fact that the petitioner found it necessary to relinquish his businesses to a creditors' trust would indicate that the combined operation of the two businesses was unprofitable, nevertheless, there is no evidence which would support a finding that petitioner incurred a statutory net operating loss in 1949 and 1950. Even if we were to conclude there was a net operating loss, the amount is not ascertainable. This is not a case where the Cohan rule might be applicable, since the losses must first be carried back to prior years and certainty of amount is an important prerequisite. In the case of H. B. Moore, supra, this Court had occasion to comment on a record which indicated the existence of a net operating loss but which left the *251 Court with no evidence as to the amount thereof. In that case the Court stated at p. 754: It seems clear that the petitioner does have a net loss but we are wholly unable to ascertain the amount thereof, and accordingly deny the petitioner's claim therefor. Respondent has allowed petitioner the benefit of a net operating loss to the extent of $52,796.44 for the years 1949 and 1950. Based on the record before us, we hold that petitioner has failed to prove that he is entitled to net operating loss carryovers beyond that allowed by the respondent. Issue 2 Since the petitioner offered no evidence with respect to his failure to file declarations of estimated tax for the years 1952-1954, inclusive, the additions to tax determined by the respondent under section 294(d)(1)(A) of the 1939 Code are sustained. Decision will be entered under Rule 50.