WILLIAM S. GILMAN II AND JEAN A. GILMAN, PETITIONERS
v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7641–77.    Filed August 1, 1979.

*John B. Bamberg,* for the petitioners.
*Roger D. Osburn,* for the respondent.

SCOTT, *Judge:* Respondent determined deficiencies in petitioners' Federal income tax for the taxable years 1973 and 1974 in the amounts of $7,008.26 and $4,314.75, respectively, and determined additions to tax for those years under section 6653(a), I.R.C. 1954,[1] of $350.41 and $215.74, respectively.

Some of the issues raised by the pleadings have been disposed of by agreement of the parties leaving for our decision:

(1) Whether petitioners are entitled to deduct for the year 1973 expenses for the demolition of air conditioning units owned and maintained by tenants in petitioners' office building and replacement thereof and the costs incurred in demolishing the roof of their office building, both of which costs were incurred in order to construct an additional story to the office building;

(2) Whether petitioners have substantiated in accordance with the requirements of section 274 all or any part of the deduction for entertainment expenses claimed on their returns; and

(3) Whether petitioners are liable for the additions to tax for negligence or intentional disregard of the rules and regulations.

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years here involved.

## FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.

Petitioners William S. Gilman II and Jean A. Gilman, who resided in Winter Park, Fla., at the time of the filing of their petition in this case, filed joint Federal income tax returns for the calendar years 1973 and 1974 with the Internal Revenue Service Center in Chamblee, Ga.

Mr. Gilman (hereinafter referred to as petitioner) in 1973 and 1974 was a practicing attorney in the Florida communities of Winter Park and Orlando. Petitioner in the years here in issue was also engaged in the real estate business. His real estate activities included the ownership of a shopping mall in Winter Park, Fla., and being an officer and director of Roberts & Gilman,[2] a real estate sales company in Florida.

In 1964, petitioner acquired the Park Mall Building, a small, one-story office building with some retail shops. Pursuant to petitioner's standard procedures, the leases of the Park Mall tenants required them to provide and maintain their own heating and air conditioning systems. Traditionally, when a tenant would vacate the building, the new tenant would purchase the systems from the vacating tenant. Only once did a tenant remove the systems when he vacated the premises.

The areas which were cooled and heated by the units were relatively small, 400- 600-square-foot rooms. Window air conditioners could have been used, but they would have been unattractive. For this reason, small compressors and air handling units were placed in the ceiling of the building.

In 1973, petitioner decided to add a second level to the building. Construction of the addition was begun in February of 1973 and completed in September 1973. In order to move the existing air conditioners to the roof of the second floor, it would have been necessary to have large air ducts passing through the offices of the second floor. For this reason, petitioner decided to have the old air conditioning units removed and provide new ones at his expense to the tenants.[3]

Petitioner expended $7,094.14 to remove the old air condition-

---

[2]Petitioner's brother, Dan Gilman, was the president of Roberts & Gilman. He, not petitioner, was the one after whom the company was named.

[3]The new air conditioners avoided the ducting problems by having the compressors located on the roof with relatively small freon lines running down to air handlers located on the first floor.

ers which were scrapped and replace them with new ones. Petitioner spent $2,253.40 for the demolition of the first-level roof before addition of the second level. Demolition of the roof was necessary in order to pour the slab for the second floor.

Between the years 1971 and 1975, petitioner's responsibility in his law firm was to obtain business for the firm. Petitioner traveled in connection with his law practice and also in the operation of his real estate business.

Petitioner owned 50 percent of a corporation, W.S.G., Inc., which rented out a twin-engine Aero Commander airplane. Petitioner and his coowner in the corporation were given first call in renting the plane. In the years at issue, petitioner rented the airplane from his corporation for business-related travel on numerous occasions. On these trips, petitioner often took business associates.

Petitioner also maintained a 55-foot yacht on which he entertained for business and social purposes. In connection with the use of his yacht, petitioner incurred bills in 1973 at the Ocean Reef Club, Walker's Cay Club, Sombrero Club, and Cannonport Club. In 1974, petitioner incurred bills at the Sombrero Club and Cannonport Club.

Petitioner also purchased liquor for use on his airplane and his yacht at Deluxe liquors in both 1973 and 1974.

In both 1973 and 1974, petitioner was a dues paying member of the Orlando Country Club and the Orlando University Club. Petitioner and his wife both used the facilities of the Orlando Country Club during the years 1973 and 1974.

During the years 1973 and 1974, petitioner paid by checks (1) a total of $479.95 and $582.67, respectively, to the University Club; (2) a total of $1,010.11 and $997.30, respectively, to the Orlando Country Club; (3) a total of $774 and $1,325, respectively, to Deluxe Liquors; (4) a total of $925 and $1,500.75, respectively, to American Express Co. for charges made on his American Express card; (5) a total of $484 and $1,350, respectively, to BankAmericard for charges made to his BankAmericard account; (6) a total of $181 and $1,688, respectively, to the Cannonport Club; and (7) a total of $842 and $110, respectively, to the Sombrero Key Club. In 1973, petitioner paid by checks a total of $1,234 and $1,173.98 to the Ocean Reef Club and Walker's Cay Club, respectively. Also, petitioner in 1974 paid a total of $699 by three checks to a pilot of the plane owned by the

corporation in which he owned a 50-percent interest. In 1974, petitioner paid $21 by check to National Car Rental. Petitioner gave a check for $150 in 1974 to John Ivey, who was the foreman of the construction company that had done the work for the addition of the second floor to petitioner's Park Mall Building. Petitioner made this gift because of the good work the foreman had done. Petitioner paid $10 by check in 1974 to the Winter Park Chamber of Commerce. He paid $70 by check in 1973 to the Olympic dinner but did not attend. He paid $110 by check in 1974 to Brandel Stevens for rental of an airplane and $303 to Hook Travel. Petitioner in 1974 paid $10.40 by check to Lucy Little for flowers for a deceased client and wrote a $400 check for cash with the notation: "Dallas Trip." With the checks for payment of his American Express and BankAmericard bills petitioner had some receipts showing the establishments at which the items were purchased but these receipts contained no additional information. Among the American Express receipts is a payment made on November 6, 1973, to the St. Regis Sheraton Hotel in New York City of $39.24 and a payment made on November 6, 1973, to the Laurent Restaurant in New York City of $127.27. In August 1973, petitioner paid $95.28 to the Key Biscayne Yacht Club for dockage fees and food. Petitioner has some of the statements from the University Club and Orlando Country Club which he paid by check, but these statements show only the nature of the charge such as "restaurant" and "bar" and no other information.

Petitioner did not keep a contemporaneous diary, account book, or the like for his 1973 and 1974 travel or entertainment expenses. Petitioner had his returns for both 1973 and 1974 prepared by certified public accountants. He turned his records over to the accountants for use in preparation of his returns. Before signing the return for each of the years 1973 and 1974, petitioner read it over.

At the time of the trial, petitioner did not have all the records he had furnished his accountants. He did not know where the balance of his records were or exactly how they might have been lost. Petitioner moved from one office to another after 1974. Also, his records were extensively examined by the Federal Bureau of Investigation (FBI) in connection with an investigation unrelated to him.

Petitioner, on his 1973 Federal income tax return, claimed a

business expense deduction of $6,834 as "unreimbursed entertainment," and on his 1974 return, under this same designation, claimed a business expense deduction of $8,376.

Respondent, in his notice of deficiency, disallowed all of petitioner's entertainment expenses with the following explanation:

The deductions of $11,671.00 and $15,981.00 claimed for employee business expenses in 1973 and 1974, respectively, are not allowable in full, because it has not been established that any amount in excess of $5,523.00 and $7,953.00, respectively, for the years 1973 and 1974 represents an ordinary and necessary business expense or was substantiated by adequate records or by sufficient evidence corroborating your own statements as to (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, recreation, or use of the facility, or the date and description of the gift, (C) the business purpose of the expense or other item, and (D) the business relationship of persons entertained, using the facility, or receiving the gift. Accordingly, income is increased $6,148.00 for the tax year 1973 and $8,028.00 for the tax year 1974.[4]

Petitioner, on Form 4831, Rental Income, attached to his 1973 income tax return, claimed under "Expenses" Item "21 — Other (list)" a deduction of $9,348 explained as "Expense of moving tenants and equipment for new construction." Respondent in his

---

[4]The sum of adjustments for petitioner's employee business expenses in 1973 and 1974 were as follows:

| 1973 | | | |
|---|---|---|---|
| | Claimed | Allowed | Disallowed or deduction (increased) by respondent |
| Unreimbursed business travel | $3,785 | $4,285.95 | ($500.95) |
| Unreimbursed entertainment | 6,834 | 0 | 6,834.00 |
| Auto expense | 1,052 | 1,052.00 | 0 |
| Law seminar | --- | 185.00 | (185.00) |
| Total | 11,671 | 5,522.95 | 6,148.05 |

| 1974 | | | |
|---|---|---|---|
| | Claimed | Allowed | Disallowed or deduction (increased) by respondent |
| Auto | $3,540 | $3,540.00 | |
| Unreimbursed travel | 4,065 | 4,412.75 | ($347.75) |
| Unreimbursed entertainment | 8,376 | 0 | 8,376.00 |
| Total | 15,981 | 7,952.75 | 8,028.25 |

notice of deficiency disallowed this deduction with the following explanation:

It is determined that the deduction of $9,348.00 claimed as the cost of moving tenants and equipment because of new construction represents a capital expenditure under section 263 of the Internal Revenue Code and, therefore, is not allowable. Accordingly, income for the tax year 1973 is increased $9,348.00.

In respondent's notice of deficiency, it was also determined that part of the underpayment of tax as determined for 1973 and 1974 was due to negligence or intentional disregard of the rules and regulations. Therefore, a 5-percent addition to tax was asserted under section 6653(a) for each of these years.

## OPINION

Petitioner deducted the amount expended to remove the tenants' air conditioners and replace them with new ones and the cost of demolishing the roof on the Park Mall Building as an expense on the schedule of rental income on his 1973 Federal income tax return. However, in his brief, he refers to section 1.165–3, Income Tax Regs., dealing with the deductibility of demolition losses. Although it is not completely clear from petitioner's argument, he is apparently contending that the $9,348 which he deducted from rental income is, in fact, a deductible loss under section 165.

Respondent in his brief does not specifically address the issue of whether the cost of removing the tenants' air conditioners and replacing them with new ones and of demolishing the roof on the office building should be considered a demolition loss under section 165(a) and section 1.165–3(b)(1), Income Tax Regs.[5]

---

[5]Sec. 1.165–3, Income Tax Regs., dealing with demolition of buildings was promulgated as T.D. 6445, 1960–1 C.B. 93, 98–99, in the Federal Register at 25 Fed. Reg. 381, on Jan. 16, 1960. Notice of the proposed rulemaking regarding the regulations under sec. 165, I.R.C. 1954, as amended, relating to deductions for losses, was published on Oct. 8, 1959, in the Federal Register (24 Fed. Reg. 8167). It was made applicable to all taxable years after Dec. 31, 1953, and ending after Aug. 16, 1954, except as otherwise specifically provided therein. Sec. 1.165–3(a), Income Tax Regs., which deals with demolition of buildings where intent to demolish was formed at the time of purchase, provides in part as follows:

Sec. 1.165–3 Demolition of buildings.

(a) *Intent to demolish formed at time of purchase.* (1) Except as provided in subparagraph (2) of this paragraph, the following rule shall apply when, in the course of a trade or business or in a transaction entered into for profit, real property is purchased with the intention of demolishing either immediately or subsequently the buildings situated thereon: No deduction shall be allowed under section 165(a) on account of the demolition of the old buildings even though any demolition originally

Respondent argues that "the demolition expenses were clearly capital expenses within the meaning of section 263 rather than ordinary and necessary business expenses under section 162." In support of this argument, he cites such cases as *Coors Porcelain Co. v. Commissioner*, 52 T.C. 682, 688–693 (1969); *Jones v. Commissioner*, 25 T.C. 1100 (1956), remanded on other grounds 259 F.2d 300 (5th Cir. 1958); and *Difco Laboratories, Inc. v. Commissioner*, 10 T.C. 660 (1948). The *Coors Porcelain Co.* case deals with the deduction for obsolescence. In *Jones v. Commissioner, supra* at 1103, we stated with respect to the demolition of a small warehouse:

> Raymond decided in 1949 to demolish a small warehouse in order to make way for the construction of a new building or buildings. He had used the warehouse for some time prior thereto for the storage of tools and parts. The adjusted basis of the warehouse is not deductible from income of 1949 under such circumstances but must be added as a part of the cost of the new asset constructed in its place. *Estate of Edgar S. Appleby*, 41 B.T.A. 18, affd. 123 F.2d 700; *Henry Phipps Estates*, 5 T.C. 964.[6]

---

planned is subsequently deferred or abandoned. The entire basis of the property so purchased shall, notwithstanding the provisions of sec. 1.167(a)–5, be allocated to the land only. Such basis shall be increased by the net cost of demolition or decreased by the net proceeds from demolition.

Sec. 1.165–3(b), Income Tax Regs., which deals with the intent to demolish the building formed subsequent to the time it is acquired, provides in part as follows:

(b) *Intent to demolish formed subsequent to the time of acquisition.* (1) Except as provided in subparagraph (2) of this paragraph, the loss incurred in a trade or business or in a transaction entered into for profit and arising from a demolition of old buildings shall be allowed as a deduction under section 165(a) if the demolition occurs as a result of a plan formed subsequent to the acquisition of the buildings demolished. The amount of the loss shall be the adjusted basis of the buildings demolished increased by the net cost of demolition or decreased by the net proceeds from demolition. See paragraph (c) of sec. 1.165–1 relating to amount deductible under section 165. The basis of any building acquired in replacement of the old buildings shall not include any part of the basis of the property demolished.

⁶While *Jones v. Commissioner*, 25 T.C. 1100 (1956), remanded on other grounds 259 F.2d 300 (5th Cir. 1958), does not explain the rational for disallowance of the adjusted basis of the demolished warehouse, the cases cited therein made it clear that prior to the adoption in 1960 of present sec. 1.165–3(b)(1), Income Tax Regs., this Court held that no demolition loss was allowable both where the intent to demolish was formed at the time of acquisition of the land and where intent was formed to demolish after acquisition for the specific purpose of building a new building as distinguished from the building becoming useless or demolition being required by the new construction where not initially intended. In this respect, we stated in *Henry Phipps Estates v. Commissioner*, 5 T.C. 964, 969 (1945):

"Examination of the various cases cited to us clearly indicates that petitioner's contention should be sustained. It is true that cases hold that, where there is at time of acquisition of property intent to demolish and rebuild, no deductible loss occurs and the basis of the former property may be used in computation of depreciation; but it does not follow that such former basis may not likewise be included in other circumstances, that is, where, as here, there is the requisite intention to rebuild at the time of demolition. The Circuit Court of Appeals for the Second Circuit in the *Appleby* case so states, saying (referring to the contention that the rule allowing the use of former basis does not apply where there is no intent at time of purchase to raze and rebuild or where taxpayer acquires

*Difco Laboratories, Inc. v. Commissioner, supra,* involved the issue of whether certain alterations to buildings were repairs and therefore deductible as business expenses or improvements which were required to be capitalized. Respondent also cites a number of cases holding that where work that might otherwise be considered as a repair which is a deductible business expense is done in conjunction with an overall remodeling program the cost of the work must be capitalized as part of the overall remodeling program.

Other than *Jones v. Commissioner, supra,* the cases cited by respondent do not address directly the question of deductibility of a demolition loss or what constitutes a demolition loss. *Jones v. Commissioner* was decided prior to the adoption of the present regulations with respect to demolition losses. Since the adoption of these regulations, we have consistently held that if property was acquired with the intent to demolish a building located thereon, the building has no basis separate from the land and the total amount paid for the property plus the cost of demolition less salvage value received becomes a part of the cost of the land acquired, but if the intent to demolish is formed after the land is acquired, the demolition loss is a deductible loss under section 165(a). *Storz v. Commissioner,* 68 T.C. 84, 97–98 (1977), revd. on another issue 583 F.2d 972 (8th Cir. 1978). Since adoption of these regulations, a demolition loss, where the intent to demolish was formed after the acquisition of the business property or where the property had previously been used for personal purposes after its conversion to business property, has been held to be deductible even though the demolition was for the purpose of permitting the erection of a new building on the land. *McBride v. Commissioner,* 50 T.C. 1 (1968); *Canelo v. Commissioner,* 53 T.C. 217, 229 (1969).[7] In *Levinson v. Commissioner,* 59 T.C. 676, 679–680 (1973), we stated in this respect:

otherwise than by purchase):

" ' * * * It would be unreasonable to hold that the statement of a rule for this single instance excludes application of a similar rule to cases where the intent to raze and rebuild was formed after the property was acquired. Losses are recognized only when they result from a closed transaction. If a building is demolished because unsuitable for further use, the transaction with respect to the building is closed and the taxpayer may take his loss; but if the purpose of demolition is to make way for the erection of a new structure, the result is merely to substitute a more valuable asset for the less valuable and the loss from demolition may reasonably be considered as part of the cost of the new asset and to be depreciated during its life, * * * . ' "

[7]Neither of these cases discuss such cases as *Jones v. Commissioner, supra; Henry Phipps Estates v. Commissioner, supra; Estate of Appleby v. Commissioner,* 41 B.T.A. 18 (1940), affd. 123 F.2d 700 (2d

Nor are we impressed with petitioners' further argument that section 1.165–3(b)(2) is invalid because it establishes an arbitrary exception to the general rule of deductibility prescribed in section 1.165–3(b)(1). In support of this contention, petitioners have favored us with a comprehensive analysis of respondent's prior regulations and the case law in respect thereto, much of which is set forth in *Herman Landerman*, 54 T.C. at 1045–1047, and *Landerman v. Commissioner*, 454 F.2d 338, 340–341 (C.A. 7, 1971). Under that case law, a taxpayer who demolished an old building in order to replace it with a new one was required to add the adjusted basis of the old building to the basis of the new building rather than deduct it as a loss, even when the intent to demolish was formed subsequent to the acquisition of the demolished buildings. *A. Raymond Jones*, 25 T.C. 1100, 1103 (1956), reversed on another issue 259 F.2d 300 (C.A. 5, 1958); *Henry Phipps Estates*, 5 T.C. 964 (1945); *Estate of Edgar S. Appleby*, 41 B.T.A 18 (1940), affd. 123 F.2d 700, 702 (C.A. 2, 1941). As under current section 1.165–3(b)(2), however, the earlier cases held that a lessor who demolished a building in order to construct a new one was required to amortize the basis of the demolished building over the term of the lease, where the demolition was either permitted or required by the terms of the lease. *Estate of Clara Nickoll, supra; Laurene Walker Berger*, 7 T.C. 1339 (1946); *Anahma Realty Corporation*, 16 B.T.A. 749 (1929), affd. 42 F.2d 128 (C.A. 2, 1930); *Chas. N. Manning, et al.*, 7 B.T.A. 286 (1927). See also Rev. Rul. 67–410, 1967–2 C.B. 93.

Petitioners' contention is that the current regulation unlike the position taken in the earlier cases makes an arbitrary distinction in providing for different treatment of demolitions depending on whether or not an existing lease is involved. Petitioners maintain that a taxpayer is in the same economic position and should be entitled to deduct a loss in the year of demolition whether he (1) first demolishes the old building, erects a new building on the same site, and then leases the new building, or (2) first leases a new building to be constructed, demolishes the old building, and then erects the new building on the same site.

Petitioners' argument ignores a critical distinction between the two situations. In one, the taxpayer has, by virtue of the lease, acquired a valuable right and the demolition is an essential precondition to his realization of the economic benefits therefrom. In the other such a direct causal relationship between the acquired right and the demolition is lacking, although admittedly every taxpayer who constructs a new building with the intention of leasing it necessarily recognizes that any existing building on the same site must be demolished before his objective can be realized. In essence the respondent has simply adapted an old saying by incorporating into his regulations a recognition of the fact that a taxpayer with "a bird in the hand" is in a different

Cir. 1941), but merely rely on respondent's 1960 regulations. However, from the facts found in these cases, it is clear that absent the change in the regulations they would be in conflict with such cases. However, *Levinson v. Commissioner*, 59 T.C. 676 (1973), does discuss the change in the regulations and specifically states that under the 1960 regulations the deduction is allowable, absent the lease issue there involved, when the building is demolished with the intent to build a new building.

position than a taxpayer with "two in the bush." In this connection we note in passing that the provisions of section 1.165–3(b)(1) also apply where no lease is involved, i.e., where a taxpayer demolishes an old building and constructs a new one for his own use. [Fn. ref. omitted.]

If petitioner is correct in his contention that the cost of replacing the tenants' air conditioners which had to be demolished in connection with the addition of the second story and the cost of demolishing the roof of the office building should be considered as the demolition of a building, then it would appear that petitioner is correct in his contention that the loss is deductible under section 165(a) and section 1.165–3(b), Income Tax Regs. However, if a demolition loss applies only to the demolition of an entire building, the question becomes whether the cost of demolishing the roof and the replacement of the tenants' air conditioners was so directly tied to the construction of the second story of the Park Mall Building as to properly be considered capital expenditures rather than deductible business expenditures.

Since the stipulation is that petitioner expended the $2,253.40 for demolition of the roof of the first level of the Park Mall Building before the addition of the second level, it is clear that if a demolition loss applies to a part of a building as well as to the whole building petitioner would be entitled to deduct the cost of demolishing the roof of the Park Mall Building. While it is not specifically so stated, we interpret the stipulation to mean that the $2,253.40 was the net demolition cost of the roof. From the facts here, it is clear that petitioner did not intend to demolish the roof at the time he acquired the Park Mall Building in 1964. The evidence shows that petitioner's decision to add a second floor, thereby requiring the roof of the building to be demolished, was made shortly before the construction work for building the second floor began in 1973.

We have found no recent cases specifically discussing the deductibility of the cost of partial demolition of a building. In a very early case, *First National Bank of Evanston, Wyo. v. Commissioner*, 1 B.T.A. 9 (1924), we held, under the provisions of article 142 of Regulations 62 as amended,[8] that a loss sustained

---

[8]This regulation provided:

"Loss due to the voluntary removal or demolition of old buildings, the scrapping of old machinery, equipment, etc., incident to removal and replacements will be deductible from gross income in a sum

by a taxpayer as a result of a demolition of a part of a building in connection with an alteration of the building was a deductible loss. In that case we stated:

The Commissioner has disallowed the deduction solely upon the ground that inasmuch as the building was not totally demolished the deduction claimed is not within the purview of the law as interpreted by the regulation above quoted. The Board is of the opinion that this is not correct on principle; also, that the deduction is not inconsistent with the express language of the regulation. If it be admitted that an amount claimed as a deduction from gross income by a corporate taxpayer actually represents the depreciated cost of a portion of a building demolished, the Board is of the opinion that the amount claimed is a legal deduction from gross income when the alteration is made as an incident to the conduct of a business. * * *

See also *Steinbach Co. v. Commissioner*, 3 B.T.A. 348, 351, 355 (1926). Neither party has cited us to a case, nor have we found one, precisely discussing the point of whether a demolition of a part of a building in connection with an addition to or alteration of the building falls within the provisions of section 1.165–3(b), Income Tax Regs., allowing deduction for demolition losses. In *Union Bed & Spring Co. v. Commissioner*, 9 B.T.A. 352–356 (1927), revd. 39 F.2d 383 (7th Cir. 1930), we held the cost of demolition of part of a building in connection with an alteration of the building not to be deductible on the ground that the taxpayer knew when he acquired the building that the alteration would be necessary, thereby requiring partial demolition of the building. In reversing our holding, the Circuit Court held that the partial demolition of a building in connection with making alterations should be recognized as a demolition loss and reversed our holding that the taxpayer intended to demolish a portion of the building when he acquired it rather than forming that intent at a later date. In *Heyman v. Commissioner*, 6 T.C. 799, 801 (1946), in discussing the Circuit Court's opinion in *Union Bed & Spring Co. v. Commissioner, supra,* we did not question the holding that demolition of part of a building could give rise to a demolition loss but rejected the method of computation of that loss used by the Circuit Court. In *Estate of Nickoll v. Commissioner*, 32 T.C. 1346, 1349 (1959), affd. 282 F.2d 895 (7th

representing the difference between the cost of such property demolished or scrapped, less salvage, and the amount of depreciation sustained with respect to the property prior to its demolition or scrapping, and allowable as a deduction in computing net income."

Cir. 1960), we held that where a whole building was substantially demolished as a necessary condition to the execution of a lease, the value of the demolished building was not a deductible loss but was a proper charge to the cost of acquiring the lease. In the *Estate of Nickoll* case we cited the Circuit Court opinion in *Union Bed & Spring Co. v. Commissioner, supra,* but considered it distinguishable.[9] The Seventh Circuit Court in affirming our decision, stated as follows in this regard (p. 898):

> Throughout this litigation taxpayers have relied on a line of cases based upon Union Bed & Spring Co. v. Commissioner of Internal Revenue, 7 Cir., 1930, 39 F.2d 383. See also, Providence Journal Co. v. Broderick, 1 Cir., 1939, 104 F.2d 614; Liberty Baking Co. v. Heiner, 3 Cir., 1930, 37 F.2d 703; Lynchburg National Bank & Trust Co., 20 T.C. 670, 674, affirmed 4 Cir., 1953, 208 F.2d 757; N. W. Ayer & Son, Inc., 1951, 17 T.C. 631. Taxpayers argue that these cases stand for the following propositions which control this case: that the intent of the taxpayer, with respect to demolition, on the date of acquisition of the property is a controlling factor in determining whether a loss deduction is proper; that no loss is deductible if at the time of acquisition there was an intent to demolish; but that if the decision to demolish was made subsequent to acquisition because of *an intervening event that made the building unusable,* then a loss deduction is proper.
>
> We agree with these principles as an abstract statement of law.
>
> Taxpayers concede and the record amply demonstrates that taxpayers had no intent to demolish at the time of acquisition of the property. However, we find no intervening event that made the building in question unusable. Further, these cases on which taxpayers rely do not involve situations where the subsequent intent to demolish was intimately connected with and incidental to taxpayers' securing a valuable lease and ownership of a remodeled building as is the case here. They are not applicable to the situation before us.

While cases such as *McBride v. Commissioner, supra,* and *Canelo v. Commissioner, supra,* make it clear that the fact that the old building was demolished in order to permit the new construction does not control the deduction of the demolition loss under section 165(a) and section 1.165–3(b), Income Tax Regs., now in effect, we have found no case under these regulations dealing with a demolition of a part of a building. However, we find nothing in any of the cases, either before or after the promulgation of the present regulations, distinguishing between

---

[9]Sec. 1.165–3(b)(2), Income Tax Regs., as adopted in 1960 deals with the issue involved in *Estate of Nickoll v. Commissioner,* 32 T.C. 1346 (1959), affd. 282 F.2d 895 (7th Cir. 1960), of the demolition of a building pursuant to a lease. An exception to the provision of sec. 1.165–3(b)(1), Income Tax Regs., is made under this circumstance. See *Landerman v. Commissioner,* 54 T.C. 1042, 1045 (1970), affd. 454 F.2d 338 (7th Cir. 1971). Cf. *Hightower v. United States,* 463 F.2d 182 (5th Cir. 1972).

demolition of a part of a building and demolition of the entire building as controlling whether a taxpayer is entitled to a demolition loss. Under section 1.165–3(b), Income Tax Regs., we conclude that petitioner is entitled to a deduction for the $2,253.40 for demolition of the roof of the Park Mall Building.

The question with respect to the demolishing or scrapping of the air conditioners belonging to petitioner's tenants and replacing them at petitioner's expense with new air conditioners belonging to the tenants is more difficult. Because of the tenants' air conditioners being in the roof of petitioner's building it was necessary that they be removed in order for the roof to be demolished. The old air conditioners were scrapped and replaced by new air conditioners. It appears from the record that these air conditioners could have been removed without being scrapped but would not have been satisfactory to use on a second floor roof. The indication is that they were scrapped because the structure of the new building was not suitable for use of these air conditioners. The scrapped air conditioners did not belong to petitioner. If the air conditioners had belonged to petitioner, any portion of their basis which had not been recovered by depreciation at the time they were scrapped would be deductible when they were scrapped, and the new air conditioners placed on the second story roof would be depreciable over their useful life. See *Coors Porcelain Co. v. Commissioner, supra.* However, the air conditioners were the property of the tenants and their scrapping in connection with the demolition of the roof of the building was effectively a part of the demolition cost of the roof. Since the new air conditioners, as were the old, were owned by the tenants, it appears realistic to consider the cost of these new air conditioners as a part of the cost of the demolition of the roof. Obviously, petitioner was obligated to compensate his tenants for their air conditioners when his demolition of the roof to the building required a scrapping of these air conditioners. Petitioner decided to discharge this obligation by replacement of the air conditioners scrapped with new air conditioners. In our view, demolishing and replacing the air conditioners is so directly tied to the demolishing of the first floor roof that it was an integral part of that demolition cost. For this reason, we conclude that petitioners are entitled to deduct as a demolition loss under section 1.165–3(b)(1), Income Tax Regs., the $7,094.14 cost of

removing the old air conditioners and replacing them with new ones to be owned by the tenants.

The second issue is how much, if any, of the amount petitioner claimed as deductible entertainment expenses for each of the years 1973 and 1974 has been substantiated under section 274 and the regulations issued pursuant thereto. Section 162(a) provides a deduction for all ordinary and necessary expenses paid or incurred in carrying on a trade or business. Section 162(a) deductions, however, are limited by the provisions of section 274. Section 274(a) limits deductions for items with respect to entertainment, amusement, or recreation activities and with respect to facilities used in connection with those activities.[10] Section 274(d) limits deductions for business expenses for entertainment, amusement, and recreation to those items with respect to which—

the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, recreation, or use of the facility, or the date and description of the gift, (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of persons entertained, using the facility, or receiving the gift.* * *[11]

---

[10]Sec. 274(a) provides:

(a) ENTERTAINMENT, AMUSEMENT, OR RECREATION.—
(1) IN GENERAL.—No deduction otherwise allowable under this chapter shall be allowed for any item—
(A) ACTIVITY.—With respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, unless the taxpayer establishes that the item was directly related to, or, in the case of an item directly preceding or following a substantial and bona fide business discussion (including business meetings at a convention or otherwise), that such item was associated with, the active conduct of the taxpayer's trade or business, or
(B) FACILITY.—With respect to a facility used in connection with an activity referred to in subparagraph (A), unless the taxpayer establishes that the facility was used primarily for the furtherance of the taxpayer's trade or business and that the item was directly related to the active conduct of such trade or business,
and such deduction shall in no event exceed the portion of such item directly related to, or, in the case of an item described in subparagraph (A) directly preceding or following a substantial and bona fide business discussion (including business meetings at a convention or otherwise), the portion of such item associated with, the active conduct of the taxpayer's trade or business.
(2) SPECIAL RULES.—For purposes of applying paragraph (1)—
(A) Dues or fees to any social, athletic, or sporting club or organization shall be treated as items with respect to facilities.
(B) An activity described in section 212 shall be treated as a trade or business.
[11]In full, sec. 274(d) provides:

(d) SUBSTANTIATION REQUIRED—No deduction shall be allowed—
(1) under section 162 or 212 for any traveling expense (including meals and lodging while away

Section 1.274–5(b)(1), Income Tax Regs., provides that no deduction shall be allowed for entertainment or a gift unless the taxpayer establishes the amount of each separate expenditure, the time, place, and business purpose of the expenditure, and the business relationship of the person entertained.[12] Section 1.274–

from home),

(2) for any item with respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, or with respect to a facility used in connection with such an activity, or

(3) for any expense for gifts,

unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, recreation, or use of the facility, or the date and description of the gift, (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of persons entertained, using the facility, or receiving the gift. The Secretary or his delegate may by regulations provide that some or all of the requirements of the preceding sentence shall not apply in the case of an expense which does not exceed an amount prescribed pursuant to such regulations.

[12]Sec. 1.274–5 [Income Tax Regs.] Substantiation requirements.

(b) *Elements of an expenditure*—(1) *In general.* Section 274(d) and this section contemplate that no deduction shall be allowed for any expenditure for travel, entertainment, or a gift unless the taxpayer substantiates the following elements for each such expenditure:

(i) Amount;

(ii) Time and place of travel or entertainment (or use of a facility with respect to entertainment), or date and description of a gift;

(iii) Business purpose; and

(iv) Business relationship to the taxpayer of each person entertained, using an entertainment facility or receiving a gift.

\*        \*        \*        \*        \*        \*        \*

(3) *Entertainment in general.* Elements to be proved with respect to an expenditure for entertainment are—

(i) *Amount.* Amount of each separate expenditure for entertainment, except that such incidental items as taxi fares or telephone calls may be aggregated on a daily basis;

(ii) *Time.* Date of entertainment;

(iii) *Place.* Name, if any, address or location, and designation of type of entertainment, such as dinner or theater, if such information is not apparent from the designation of the place;

(iv) *Business purpose.* Business reason for the entertainment or nature of business benefit derived or expected to be derived as a result of the entertainment and, except in the case of business meals described in section 274(e)(1), the nature of any business discussion or activity;

(v) *Business relationship.* Occupation or other information relating to the person or persons entertained, including name, title, or other designation, sufficient to establish business relationshp to the taxpayer.

\*        \*        \*        \*        \*        \*        \*

(c) *Rules for substantiation*—(1) *In general.* A taxpayer must substantiate each element of an expenditure (described in paragraph (b) of this section) by adequate records or by sufficient evidence corroborating his own statement except as otherwise provided in this section. Section 274(d) contemplates that a taxpayer will maintain and produce such substantiation as will constitute clear proof of an expenditure for travel, entertainment, or gifts referred to in section 274. A record of the elements of an expenditure made at or near the time of the expenditure, supported by sufficient documentary evidence, has a high degree of credibility not present with respect to a statement prepared subsequent thereto when generally there is a lack of accurate recall. Thus, the corroborative evidence required to support a statement not made at or near the time of the expenditure must have a high degree of probative value to elevate such statement and evidence to the level of credibility reflected by a record made at or near the time of the expenditure supported by sufficient

5(c), Income Tax Regs., provides the rules for substantiation of each of the elements of the expenditures required by section 1.274–5(b), Income Tax Regs., to be shown. This section provides

documentary evidence. The substantiation requirements of section 274(d) are designed to encourage taxpayers to maintain the records, together with documentary evidence, as provided in subparagraph (2) of this paragraph. To obtain a deduction for an expenditure for travel, entertainment, or gifts, a taxpayer must substantiate, in accordance with the provisions of this paragraph, each element of such an expenditure.

(2) *Substantiation by adequate records—(i) In general.* To meet the "adequate records" requirements of section 274(d), a taxpayer shall maintain an account book, diary, statement of expense or similar record (as provided in subdivision (ii) of this subparagraph) and documentary evidence (as provided in subdivision (iii) of this subparagraph) which, in combination, are sufficient to establish each element of an expenditure specified in paragraph (b) of this section. It is not necessary to record information in an account book, diary, statement of expense or similar record which duplicates information reflected on a receipt so long as such account book and receipt complement each other in an orderly manner.

(ii) *Account book, diary, etc.* An account book, diary, statement of expense or similar record must be prepared or maintained in such manner that each recording of an element of an expenditure is made at or near the time of the expenditure.

\* \* \* \* \* \* \*

(b) *Substantiation of business purpose.* In order to constitute an adequate record of business purpose within the meaning of section 274(d) and this subparagraph, a written statement of business purpose generally is required. However, the degree of substantiation necessary to establish business purpose will vary depending upon the facts and circumstances of each case. Where the business purpose of an expenditure is evident from the surrounding facts and circumstances, a written explanation of such business purpose will not be required. For example, in the case of a salesman calling on customers on an established sales route, a written explanation of the business purpose of such travel ordinarily will not be required. Similarly, in the case of a business meal described in section 274(e)(1), if the business purpose of such meal is evident from the business relationship to the taxpayer of the persons entertained and other surrounding circumstances, a written explanation of such business purpose will not be required.

\* \* \* \* \* \* \*

(iii) *Documentary evidence.* Documentary evidence, such as receipts, paid bills, or similar evidence sufficient to support an expenditure shall be required for—

*(a)* Any expenditure for lodging while traveling away from home, and

*(b)* Any other expenditure of $25 or more, except, for transportation charges, documentary evidence will not be required if not readily available.

provided, however that the Commissioner, in his discretion, may prescribe rules waiving such requirements in circumstances where he determines it is impracticable for such documentary evidence to be required. \* \* \*

\* \* \* \* \* \* \*

(3) *Substantiation by other sufficient evidence.* If a taxpayer fails to establish to the satisfaction of the district director that he has substantially complied with the "adequate records" requirements of subparagraph (2) of this paragraph with respect to an element of an expenditure, then, except as otherwise provided in this paragraph, the taxpayer must establish such element—

(i) By his own statement, whether written or oral, containing specific information in detail as to such element; and

(ii) By other corroborative evidence sufficient to establish such element.

If such element is the description of a gift, or the cost, time, place, or date of an expenditure, the corroborative evidence shall be direct evidence, such as a statement in writing or the oral testimony of persons entertained or other witness setting forth detailed information about such element, or the documentary evidence described in subparagraph (2) of this paragraph. If such element is either the business relationship to the taxpayer of persons entertained or the business purpose of an expenditure, the corroborative evidence may be circumstantial evidence.

for contemporaneously made written substantiation or, absent complete written substantiation, testimony of the person entertained. Section 1.274–5(c)(6)(b)(iii), Income Tax Regs., provides for the rules governing primary use of a facility.

Respondent argues that in many instances petitioner has not even established that the amounts petitioner claims to be deductible as entertainment expenses were ordinary and necessary business expenses under section 162(a). Respondent contends that none of the expenditures meet the stringent requirements of section 274(a) or 274(d).

Petitioner argues that he has met the requirements of section 274(d) by the records submitted into evidence coupled with petitioner's own testimony and respondent's acceptance of the business purpose of petitioner's traveling expenses during 1973 and 1974.

We have reviewed in detail the records submitted and have considered those records in conjunction with petitioner's testimony and the records with respect to petitioner's travel. Except for a few items set forth below, we conclude that the records submitted by petitioner considered in conjunction with his testimony and travel records do not meet the requirements of section 274(d) and the regulations issued pursuant thereto.

Petitioner claims $479.95 and $582.67 for University Club dues and business entertainment expenses at that club in 1973 and 1974, respectively. Petitioner maintains that he made no personal use of the facility. Section 274(a)(1)(B) denies deductions for items with respect to a facility used for business entertainment unless the taxpayer establishes that the facility was used primarily for furtherance of his business and that the particular item was directly related to the active conduct of his business. Section 274(a)(2)(A) includes dues to social, athletic, or sporting clubs as subsec. (a)(1)(B) items.

Section 1.274–5(c)(6)(iii), Income Tax Regs., provides that, unless a taxpayer keeps records to show for each claimed business use of a facility the amount of the expense, the time and business purpose of the entertainment, and the name and business relationship of the person entertained, a facility which is likely to serve a personal purpose shall be presumed to be primarily used for personal purposes.

The only records petitioner kept of his use of the University Club were his checks made payable to that club. The club would

appear to be one serving personal purposes. Therefore, it must be presumed that the use of the facility was primarily personal.

Section 274(d) requires substantiation of each of the uses of the facility by either adequate records or sufficient evidence corroborating the taxpayer's own statement. In this case, there are no adequate records, no detailed statement by petitioner pertaining to the persons entertained at the facility, and no corroborative evidence. Petitioner has failed to substantiate the claimed deduction under section 274(d). See *Rutz v. Commissioner*, 66 T.C. 879, 884 (1976), wherein it was noted that section 274(d) was meant to disallow deductions based on a taxpayer's unsupported, self-serving testimony. Also see *Dowell v. United States*, 522 F.2d 708 (5th Cir. 1975).

Petitioner also claims $1,010.11 and $997.30 for expenses incurred with respect to his membership in the Orlando Country Club in 1973 and 1974, respectively. Although petitioner did submit some 1973 statements sent him by the country club as well as checks made payable to that club, these statements do not show for what the expenditure was made or who, if anyone, was entertained. Petitioner has totally failed to meet the requirements of section 274(a)(1)(B) and section 274(d) with respect to his claimed deduction of the country club expenses.

For the same reasons, petitioner has failed to substantiate his claimed deductions of expenses incurred at the Cannonport Club, the Sombrero Key Club, the Ocean Reef Club, and Walker's Cay Club. With the exception of a couple of statements from the Ocean Reef Club, we are presented with no breakdown of the expenses petitioner incurred at these clubs. The statements from the Ocean Reef Club give no names or other necessary information. Most of the expenses, however, appear to have been in connection with a yacht owned by petitioner. As with the University Club and the Orlando Country Club, petitioner has failed to show that the yacht qualifies under section 274(a)(1)(B). Petitioner testified that he used the yacht both for personal and business entertainment. He has not shown the extent of either use and therefore has not shown that the yacht was used primarily for business. Additionally, the record is completely lacking the detailed information and the corroborative evidence required for substantiation under section 274(d). See *Rutz v. Commissioner, supra.*

Petitioner claims that he is entitled to deduct $774 and $1,325

paid to Deluxe Liquors for beverages in the years 1973 and 1974, respectively. Petitioner has not met the requirements of section 274(d) with respect to these claimed deductions. Petitioner produced some checks made payable to Deluxe Liquors. Other than his testimony estimating that 75 percent of the beverages were used in a business context and 25 percent in a personal one, petitioner has offered no evidence of the actual use of the beverages. The individual check stubs which he retained were claimed by petitioner to represent primarily purchases for the yacht and aircraft, for a cocktail party for tenants, and for guests at the Winter Park Art Festival. There is no corroborative evidence of the latter two events so that section 274(d) bars the deductions of those expenses. As for the aircraft and yacht beverage expenditure, there is some corroboration of the business purpose of some of the trips taken on board the aircraft and the yacht. Petitioner points out that respondent accepted his traveling expenditure deductions under section 274(d) as being substantiated by the pilot invoices and other receipts for travel and concludes that this is sufficient to corroborate his testimony that the alcohol purchased was drunk in connection with business. The fact that the plane and yacht were sometimes used for business travel is not corroborative evidence of the use of the beverages petitioner purchased from Deluxe Liquors. For this reason, section 274(a)(1)(A) and section 274(d) bar petitioner from deducting the Deluxe Liquor expenses.

Petitioner claims deductions for $925 and $1,500.75 paid to American Express for credit card charges in 1973 and 1974, respectively. But petitioner placed in evidence only the canceled checks or stubs from his checkbook to show payment of these amounts to American Express. He testified that he always used his credit cards for business and that his wife did not use them. Clearly, this testimony does not establish the business connection of the entertainment required by section 274(a) and section 274(d). The detailed information and corroborative evidence necessary are completely lacking. See *Dowell v. United States, supra.*

Petitioner produced only four receipts from his many American Express charges and the one statement from American Express which referred to those four expenditures. One of those receipts was from a local, Orlando/Winter Park, restaurant and another from a local motel. Petitioner did not testify as to the

section 274(d) elements of these expenditures, and produced no other evidence of the business nature of these expenditures. The other two receipts are apparently being claimed not as entertainment but as travel expenditures for a 1973 business trip to New York. Respondent apparently did allow petitioner a deduction for air fare to New York and return paid to a travel agent in 1974 as a business travel expense. This amount had also apparently been claimed as an entertainment expense. However, the date of the travel for which this payment was made is not shown. If the travel allowed was in 1974, certainly a 1973 hotel and restaurant payment was not part of this travel.[13] This record fails to show sufficient facts to substantiate any of the American Express payments as deductible under section 274.

Petitioner, also, claims deductions for $484 and $1,350 paid to BankAmericard for credit card charges in 1973 and 1974, respectively. But again, petitioner offers only the canceled checks or stubs, along with his self-serving statements as to the general use of his credit cards for business purposes, except for 12 receipts placed in evidence. Ten of those receipts were from Orlando/Winter Park restaurants or inns. Since petitioner makes no mention of these local expenditures and offers no corroborative evidence of their business purpose, it is clear that neither section 274(a) nor section 274(d) is met. Another of the receipts is from Hertz Corp. in Palm Beach, Fla. There is no testimony or other evidence in the record to tie this expenditure to a business purpose in accordance with the requirements of section 274(a) or section 274(d). The 12th receipt is from the Grand Bahama Hotel. Petitioner testified generally about trips to the Bahamas. However, there is nothing in the record to tie this $67.50 receipt to a business purpose. Thus, the section 274(a) and section 274(d) requirements are not met with respect to the Grand Bahama's receipt.

The $21 check written to the National Car Rental in 1974, the $400 check marked "Dallas Trip," and the $110 check to Brandel Stevens are not explained in the record.

The three checks totaling $699 paid to Robert Butch are not deductible employee expenses. Petitioner testified that the aircraft rental corporation, and not petitioner, was obligated to

---

[13]Similarly, whether respondent has already allowed these expenses as 1973 travel expenses is not present in our record and respondent makes no mention of these specific receipts in his briefs.

pay the pilot expenses and that Robert Butch was a pilot. Therefore, the $699 was not a section 162(a) ordinary and necessary expense of petitioner. Petitioner's payment of that expense was as a volunteer and he is therefore not entitled to a deduction under section 162(a). See *Hawkins v. Commissioner*, 20 T.C. 1069, 1075 (1953).

Petitioner claims a $150 deduction for a check written to John Ivey in 1974. John Ivey was the foreman of the construction work on petitioner's Park Mall Building. Petitioner testified that he made this gift to the foreman because of his excellent work in getting the project finished very quickly. It seems reasonable that petitioner would make a gift to the construction foreman. However, under section 1.274–3, Income Tax Regs., deductible gifts to any one individual are limited to $25 a year. We, therefore, hold that petitioner is entitled to deduct $25 but not the balance of this $150 gift.

Petitioner claims a $10 deduction for his dues paid to the Winter Park Chamber of Commerce. Petitioner was in the real estate business in Winter Park and this $10 appears to be a properly deductible expense. While the evidence with respect to the necessity for petitioner to pay dues to the Chamber of Commerce is sparse, we conclude that this $10 payment is deductible.

Petitioner claims a $10.40 deduction for a check written to Lucy Little for flowers sent to a deceased client. Although the evidence with respect to this item is not as complete as would be desirable, we conclude that this $10.40 has been shown to be deductible.

Petitioner also claims a $70 entertainment expense deduction in 1973 for an expenditure for dinner tickets to the Olympic dinner at Disney World in Orlando. He did not attend; he purchased the tickets merely as a goodwill gesture. Considering petitioner's profession and various business activities, we conclude that this $70 payment is properly deductible.

Petitioner claims a $95.28 deduction for payment of dockage fees and perhaps a lunch to the Key Biscayne Yacht Club in 1973. Petitioner testified that when he attended the law seminar, the cost of which was allowed by respondent as an employee business expense deduction, he used the boat in place

of a hotel room. Petitioner and his wife and his law partner and his wife were on the boat. The seminar was a 2-day seminar. It is reasonably clear that the dockage fees would have been the same if only petitioner had been on the yacht. Technically, if the lunch purchased included lunch for petitioner's wife or his law partner's wife, these amounts would not be allowable. However, the record in this regard is not clear and, in any event, the amount would be small. We, therefore, conclude that the $95.28 paid by petitioner to the Key Biscayne Yacht Club in 1973 is an additional deductible travel expense, although petitioner claimed the deduction as an entertainment expense. The record is clear that this $95.28 was not part of the travel expense deduction allowed by respondent.

The final issue is whether petitioner is liable for the addition to tax for negligence or intentional disregard of the rules and regulations under section 6653(a).[14] On brief, petitioner makes no argument on this point. He may have abandoned his position that he is not liable for this addition to tax. In any event, on this record, petitioner has failed to show error in respondent's determination of an addition to tax under section 6653(a). See *Courtney v. Commissioner*, 28 T.C. 658, 663–664 (1957). We find that petitioner's underpayment of tax was at least in part due to negligence in failing to keep adequate records.[15]

*Decision will be entered under Rule 155.*

---

[14]Sec. 6653(a) provides:

(a) NEGLIGENCE OR INTENTIONAL DISREGARD OF RULES AND REGULATIONS WITH RESPECT TO INCOME OR GIFT TAXES.—If any part of any underpayment (as defined in subsection (c)(1)) of any tax imposed by subtitle A or by chapter 12 of subtitle B (relating to income taxes and gift taxes) is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment.

[15]Petitioner testified that in 1973 and 1974 he did not keep adequate records as defined by sec. 1.274–5(c)(1) and (2), Income Tax Regs. The record is clear that the records he did keep, even assuming he had those he claimed to have lost subsequent to filing his returns, were not sufficient to meet the strict substantiation requirements of sec. 274(d).