ART JOHNSTON and VEDA JOHNSTON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Johnston v. Commissioner
Docket No. 8203-78.
United States Tax Court
T.C. Memo 1980-477; 1980 Tax Ct. Memo LEXIS 108; 41 T.C.M. (CCH) 258; T.C.M. (RIA) 80477; October 23, 1980, Filed Art Johnston, pro se. Jan R. Pierce, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined deficiencies in petitioners' Federal income taxes as follows: Year
Deficiency
1971
$607.42
1972
335.92
1973
257.60
1974
625.00
1975
533.91
The issues for decision are whether petitioners are entitled to a greater casualty loss in 1974 and larger deductions for travel and transportation expenses in 1974 and 1975 than those allowed by respondent. Resolution of the 1974 casualty loss issue will determine whether petitioners are entitled to net operating loss carrybacks to 1971, 1972, and 1973 and a net operating loss carryover to 1975. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioners, Art and Veda Johnston, were residents of Portland, Oreg., when they filed their petition herein. Petitioner Art Johnston (hereinafter petitioner) has been a logger for many years. Before 1954, he entered into an agreement to purchase some Oregon timberland which he bought around *110 1960. In 1954, he began construction of a road to reach the timberland which he later completed and maintained until 1974. The road was gravel over natural cover and required periodic regraveling. Petitioner estimated that the road, which was one-half mile long, cost him approximately $60,000 including about $19,000 paid to outside construction firms, use of his own tractor at $30 per hour, cost of materials such as gravel, and maintenance expenses. In January 1974, the Nehalem River flooded and completely washed out 200 feet of petitioner's road. The river's flooding was a recurring nuisance to petitioner as evidenced by casualty losses of $4,000 in 1972 when another section of the road was damaged and $6,000 in 1973 when some logs were lost. Although piling was not used before the 1974 flood, petitioner sought estimates of the cost of rebuilding the road by driving steel sheet piling along the roadway for 150 feet to establish a retaining wall which would hold fill. The lowest estimate was $25,000 from Western Construction Piledriving Company. That estimate only covers the cost of driving piling and does not include any amount for fill or gravel. The road has yet to be *111 repaired because petitioner has not obtained requisite permissions from the United States Army Corps of Engineers and the State of Oregon. On his Federal income tax returns for 1974 and 1975, petitioner deducted various items as business expenses incurred in his logging operations. Due to concessions, the only items still in controversy are travel and transportation expenses. Petitioner deducted $3,700 as transportation expenses and $1,627.41 as travel expenses in 1974 [1] and $5,916 as transportation expenses in 1975. [2]
During 1974, petitioner drove his wife to the Mayo Clinic in Rochester, Minn., for medical treatment. They then went to Chicago to see a construction millwright concerning a sawmill petitioner wanted built, but they discovered he had moved to Connecticut. While his wife visited their daughter in Pennsylvania, petitioner went to Connecticut to search for the millwright. *112 Petitioner did not make any attempt to contact him by phone or otherwise before going to Connecitcut. When his sojourn proved fruitless he went back to Pennsylvania where he remained a few days before he and his wife returned home. Petitioner offered no proof at trial concerning the costs or mileage on this 1974 trip. In his reply brief, he attached a statement of total mileage, an itemized list of motels and prices, and a total amount for meals. In 1975, petitioner traveled to Corry, Pa., where he viewed the Thompson Lumber Company sawmill which had developed a new technique and machinery for more profitably using lumber waste material. Petitioner's daughter, whose husband worked at the sawmill, had written to petitioner telling him the mill was in operation. In 1975, petitioner used outside contractors to mill his timber, although he eventually acquired his own sawmill. At trial petitioner offered no proof of the mileage traveled or the costs incurred in this 1975 trip. He attached to his reply brief a statement of mileage, an itemized list of motels and prices, and a total amount for meals. In his statutory notice of deficiency respondent allowed a casualty loss of $3,440 *113 in 1974; disallowed net operating loss carrybacks to 1971, 1972, and 1973 and a net operating loss carry forward to 1975; allowed 1974 travel and transportation expenses of $2,935; and allowed 1975 transportation expenses of $4,300. OPINION 1. The Casualty Loss
In January 1974, the Nehalem River flooded washing out 200 feet of petitioner's one-half mile logging road. That petitioner incurred a casualty loss deductible under section 165 [3] is not disputed. The parties disagree over the amount of the loss. Petitioner contends that the proper amount should be the $25,000 estimate he received for repairing the road with steel sheet piling. Respondent contends that driving piling to shore up the road would improve rather than just repair the road; that repair costs are irrelevant when repairs are not actually made; and that the proper measure of the loss is the value before the casualty minus the value after the casualty, limited by petitioner's basis in the road. We agree with respondent for the reasons below. Section *114 165(a) allows a deduction for any loss sustained which is not compensated by insurance or otherwise. [4] The amount of the loss is the lesser of the adjusted basis or the fair market value of the property immediately before the casualty reduced by the fair market value of the property immediately after the casualty. Sec. 1.165-7(b)(1), Income Tax Regs. The fair market value before and after must generally be ascertained by competent appraisal, sec. 1.165-7(a)(2)(i), Income Tax Regs., and petitioner offered no appraisal. However, petitioner contends that the $25,000 estimate for repairing the road is sufficient to demonstrate the amount of his loss. Section 1.165-7(a)(2)(ii), Income Tax Regs., provides: The cost of repairs to the property damaged is acceptable as evidence of the loss of value if the taxpayer shows *115 that (a) the repairs are necessary to restore the property to its condition immediately before the casualty, (b) the amount spent for such repairs is not excessive, (c) the repairs do not care for more than the damage suffered, and (d) the value of the property after the repairs does not as a result of the repairs exceed the value of the property immediately before the casualty. Thus, before repair costs can serve as a measure of loss of value, the taxpayer must show the repairs are necessary, reasonable in amount, only restore rather than enhance the property, and do not increase the value of the property beyond its pre-casualty level. Respondent contends that, since the road was only gravel over natural cover before the flood, adding steel sheet piling to serve as a retaining wall would "care for more than the damage suffered" and increase the value of the property above its value before the flood. Petitioner contends that a retaining wall is necessary to hold a fill before the original condition of the road can be restored. Credence is added to his position by photographs introduced at trial showing the complete destruction of the road section involved here and by past losses *116 incurred due to the flooding river. Nevertheless petitioner has not shown that the road could not be restored without the retaining wall or that the retaining wall is not a measure of protection against future floods rather than a prerequisite to any repair. See Austin v. Commissioner, 74 T.C     (Sept. 18, 1980). Furthermore, petitioner has not shown that the value of the repaired road with a retaining wall would not exceed the value of the road before the 1974 flood. Petitioner estimated that his adjusted basis in the road was $60,000-- a figure which respondent challenges as being unsupported by proof. Even if we were to accept petitioner's estimate as his correct basis in the road, it could not determine the amount of his loss. Adjusted basis serves only as a lower limit on the amount of a casualty loss. The loss amount is the lesser of the adjusted basis or the decline in value. Since petitioner has not shown the amount of his loss by the decline in the road's value, we cannot surmise whether his basis attributable to the damaged section of the road is lesser or greater than that decline in value amount. [5]
*117 Petitioner bears the burden of proof. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure, and that burden has not been met. Petitioner offered no proof of the road's fair market value before or after the flood. Nor did he offer proof or any estimate concerning the cost of repairing the road without using piling which might have been indicative of the decline in value. [6] It is evident that petitioner suffered a significant loss, but we have absolutely no basis for calculating a loss greater in amount than that allowed by respondent. Therefore, we sustain respondent's determination with regard to petitioner's casualty loss. 2. Travel and Transportation Expenses
Respondent disallowed part of petitioner's claimed deductions for travel and transportation expenses in 1974 and 1975. The only proof on those items offered by petitioner concerns the nature of the unsuccessful 1974 trip to Connecticut to contact *118 a millwright and the 1975 trip to Pennsylvania to inspect a new lumber waste use process at a sawmill. We need not address whether these trips were either primarily personal or were in the nature of pre-business expenses incident to petitioner going into the lumber, as opposed to the logging, business because the expenses of neither trip were properly substantiated. Even if we found the costs of either trip to be otherwise deductible under section 162, the substantiation requirements of section 274(d) have not been met. Section 274(d) provides: (d) Substantiation Required.--No deduction shall be allowed-- (1) under section 162 or 212 for any traveling expenses (including meals and lodging while away from home), unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, recreation, or use of the facility, or the date and description of the gift, (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of persons entertained, using the facility, or receiving the gift. *119 * * * Thus, no traveling expense may be deducted unless the taxpayer establishes by records or corroborative evidence the amount, time and place, and business purpose of the travel. See sec. 1.274-5(b)(2), Income Tax Regs. Petitioner offered no proof at trial concerning his mileage, lodging costs, meal costs, or exactly when the trips were made. To his reply brief, he attached a statement reciting mileage, an itemized list of motel costs, and a total amount for meals for each trip. A taxpayer's testimony alone is not enough to satisfy the section 274(d) requirements, Gilman v. Commissioner,72 T.C. 730 (1979), and we attach even less credence to a statement on brief unsupported by receipts or other records. We sustain the respondent's determination concerning the travel and transportation expenses in 1974 and 1975. To reflect concessions made by the parties, Decision will be entered under Rule 155.
Footnotes
1. The travel expenses were originally taken as an itemized deduction but later transferred by amended return to Schedule C as a business expense. ↩
2. Travel and "miscellaneous" expenses of $519.89 were taken as an itemized deduction in 1975. These expenses were not disallowed by respondent.↩
3. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, unless otherwise indicated.↩
4. In the case of an individual, such as petitioner, deductible losses are limited by sec. 165(c) to those incurred in a trade or business, those incurred in connection with a profit motivated transaction, or casualty and theft losses. Petitioner's was incurred in his trade or business as a logger and was a casualty loss. See sec. 1.165-7(a)(1), Income Tax Regs.↩
5. We do not mean to imply that, if petitioner had proved the decline in the road's value, his loss would be limited to the portion of his adjusted basis in the entire road mathematically attributable to the 200 feet segment damaged. While the record is unclear on this point, if the damaged road section actually crossed the river, it would certainly have been more costly to construct than a section which only ran along the river. Likewise, we recognize that when a portion of a road is destroyed more than the destroyed portion is affected--the entire road may decline in value. We simply do not have before us the type of proof necessary to apply these principles.↩
6. We need not address respondent's contention that evidence of repair costs is not competent when no repairs have been made. See generally Lamphere v. Commissioner,70 T.C. 391↩ (1978).