T.C. Memo. 2012-318

UNITED STATES TAX COURT

FRED DEUTSCH, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4865-10.                    Filed November 15, 2012.

<u>Ira B. Stechel</u> and <u>John T. Morin</u>, for petitioner.

<u>Shawna A. Early</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GOEKE, <u>Judge</u>:  Respondent determined a $367,019 deficiency and a

$73,404 accuracy-related penalty under section 6662(a)[1] for petitioner's taxable

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect at all relevant times.  All Rule references are to the Tax Court Rules of Practice and Procedure.

[*2] year 2004. Part of the determined deficiency stems from respondent's disallowance of several deductions petitioner claimed on his 2004 Schedule C, Profit or Loss From Business. Petitioner adduced no evidence or relevant testimony concerning the deductions at trial and later conceded the attendant determinations in his posttrial brief.[2] There remain two issues for decision:

(1) whether petitioner is entitled to a $2,776,050 net operating loss (NOL) deduction for the taxable year at issue. We hold that he was not so entitled; and,

(2) whether respondent appropriately determined a $73,404 section 6662(a) penalty against petitioner. We hold that his determination was appropriate.

## FINDINGS OF FACT

At the time of petition to this Court, petitioner's mailing address was in New York.

Beginning in the mid-1970s petitioner became engaged in real estate development and management, primarily in the New York metropolitan area. Petitioner participated in real estate activities through various corporations and

---

[2]Respondent also adjusted petitioner's Schedule C income by $862. Petitioner did not specifically address this adjustment at trial or on brief. We deem the issue conceded.

[*3] limited partnerships.[3]  In the late 1980s petitioner's business purportedly expanded to include real estate lending.  Petitioner states that several alleged loans, extended in his individual capacity or through his wholly owned company, Fred Deutsch Co., became unrecoverable at various nonspecified periods in the 1990s, permitting him bad debt deductions pursuant to section 166.  For his taxable year 2004 petitioner alleges that he was entitled to an NOL deduction for bad debts arising from the following purportedly unrecoverable loans:

| Debtor | Aggregate amount |
| --- | --- |
| 270 Lafayette Associates, LP | $1,142,527 |
| 285 Lafayette Associates, LP | 2,500,000 |
| Broadway Mercer Reality, Inc. | 450,000 |
| 630 West 11th Street Corp. | 423,114 |
| Stephen Corelli[*] | 182,500 |
| 104 East 98th Street Owners Corp. | 1,031,426 |
| Ashburton Five Guys | 630,407 |
| Lafayette Funding Corp. | 3,150,000 |
| Avram Lebor[**] | 1,000,000 |

[*]Petitioner submits that Mr. Corelli used the loan proceeds to acquire an interest in 630 West 11th Street Corp.

---

[3]Petitioner submits that following defaults on various loans incurred in his real estate activities, creditors obtained personal deficiency judgments against him approximating $12 million.

**[\*4]** \*\*Mr. Lebor allegedly used the loan proceeds to acquire an interest in a New Jersey real estate "project".

Petitioner purports to have held interests in all the aforementioned entities with the exception of Lafayette Funding Corp., which he states was owned by Mr. Lebor, a childhood friend and business partner.[4]

Petitioner also guaranteed loans, extended by Westinghouse Credit Corp. (Westinghouse) and Continental Realty, Inc. (Continental), to 270 Lafayette Associates, LP (270 Lafayette),[5] of $4,040,000 and $4,545,000. The loans were secured by second and third mortgages on a property held by 270 Lafayette. Following a foreclosure instituted by the holder of the first mortgage, 270 Lafayette defaulted on the second and third mortgages. Thereafter, Westinghouse and Continental commenced an action on the second mortgage against petitioner,

---

[4]Petitioner's relationship with Lafayette Funding Corp. remains unclear. A 1991 affidavit of Charles J. Angione, then vice president of Barclays Bank of New York, N.A, which was affixed to respondent's revenue agent report, reflects Mr. Angione's belief that petitioner was the vice president of Lafayette Funding Corp. Petitioner relied almost entirely on selective portions of the revenue agent report at trial but was unable to produce any documentary evidence or records from Lafayette Funding Corp. tending to rebut the statement in the affidavit or clarifying his relationship with the entity.

[5]Petitioner held a 98.5% general partner interest in 270 Lafayette Associates, LP.

[*5] resulting in a judgment of $5,087,127.27. An action was also commenced against 270 Lafayette and petitioner on the third mortgage.

On March 4, 1993, petitioner entered into a settlement agreement with Continental and Westinghouse.[6] As part of the settlement agreement, both Continental and Westinghouse agreed, subject to various conditions, to "refrain from the active prosecution of any and all enforcement actions which may have been instituted by them and to refrain from instituting, filing, or pursuing any further enforcement actions" against petitioner and 270 Lafayette and to release petitioner from "any and all personal liability" arising from the second and third mortgage.

Petitioner filed individual tax returns for taxable years 1990 through 1994 reflecting negative adjusted gross income of $82,812, $2,407,061, $1,141,924, $1,146,424, and $5,823,021, respectively. Petitioner did not file a return for taxable year 1995 or 1996. He did, however, file a tax return for taxable year 1997 in October 1998.[7] Petitioner filed individual tax returns for taxable years 1998

---

[6]Subject to the satisfaction of certain preconditions, the settlement agreement provided that Continental and Westinghouse would file stipulations in the appropriate courts vacating any judgments obtained against petitioner.

[7]The parties did not introduce into evidence petitioner's Form 1040, U.S. Individual Income Tax Return, for taxable year 1997; however, they stipulated that petitioner filed that return.

[*6] through 2003 reflecting negative adjusted gross income of $7,250,750, $6,634,311, $5,485,549, $4,279,281, $3,494,834, and $2,557,305, respectively.

At some point following 1998, respondent's Special Agent Anthony Carcione was assigned to investigate petitioner's taxable years 1995, 1996, and 1997. Revenue Agent Anthony Campetella served as a cooperating agent in the matter. Petitioner was represented by criminal attorney Benjamin Brafman and tax attorney Richard Champion throughout the criminal investigation. As part of his inquiry, Special Agent Carcione reviewed bank records and corporate documents provided by petitioner's attorneys for the purpose of determining petitioner's earned income derived from interests he held in various companies.

During the course of the investigation Mr. Champion informed Revenue Agent Campetella that any potential NOLs would have been offset by forgiveness of indebtedness income from petitioner's prior property foreclosures.

In May 2002 the U.S. Attorney's Office for the Southern District of New York filed a "felony information" in the U.S. District Court for the Southern District of New York charging petitioner with violation of section 7206(1) for willfully subscribing a false tax return for taxable year 1997. On August 1, 2002, petitioner pleaded guilty to the offense. As part of the criminal

**[*7]** proceedings, petitioner also agreed to his income tax liabilities for taxable years 1995, 1996, and 1997.

On January 14, 2003, Mr. Champion executed on petitioner's behalf a Form 4549, Income Tax Examination Changes, consenting to the assessment and collection of tax, penalties, and interest computed to February 8, 2003, for 1995 and 1996 in the following amounts:

| Year | Tax | Penalty | Interest |
|------|------|---------|----------|
| 1995 | $182,167 | $136,625.25 | $229,530.82 |
| 1996 | 114,958 | 86,218.50 | 115,781.70 |

Following the conclusion of the criminal investigation, Special Agent Carcione stated that he personally returned petitioner's documents to Mr. Brafman or Mr. Champion at some point in 2002 or 2003.

On August 17, 2004, petitioner filed a Form 1040X, Amended U.S. Individual Income Tax Return, for his taxable year 1997, claiming an NOL carryforward of $8,209,814. Respondent treated the submitted return as a claim for refund. Revenue Agent Campetella was thereafter assigned to review petitioner's claim.

As part of his examination of the 1997 NOL claim, Revenue Agent Campetella requested documentation of the final dispositions of foreclosed

[**\*8**] property and copies of the documents evidencing the purported loans which resulted in the claimed losses. Revenue Agent Campetella also met with petitioner's accountant, Jim Ashe, in his office on three separate occasions to review six boxes of petitioner's records. During his investigation Revenue Agent Campetella made copies of relevant documents; however, he did not take possession of the original documents at any point. At the conclusion of his review, Revenue Agent Campetella determined that petitioner had failed to substantiate his NOL claim. Petitioner never formally contested Revenue Agent Campetella's determination in a civil refund suit. See generally secs. 6532, 7422.

## OPINION

### I. Burden of Proof

Taxpayers are required to maintain adequate records substantiating claimed loss deductions and generally bear the burden of proving that they are entitled to claimed losses. Sec. 6001; Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933).[8]

---

[8]Additionally, a taxpayer claiming an NOL deduction for a taxable year must file with the tax return for that year a concise statement setting forth the amount of the NOL deduction claimed and all material and pertinent facts, including a detailed schedule showing the computation of the NOL deduction. See sec. 1.172-1(c), Income Tax Regs.

**[\*9]**   Taxpayers attempting to deduct NOLs bear, in particular, the burden of establishing both the existence of the NOLs and the amount of any NOL that may be carried over to the subject years.  Rule 142(a)(1); <u>United States v. Olympic Radio & Television, Inc.</u>, 349 U.S. 232, 235 (1955); <u>Keith v. Commissioner</u>, 115 T.C. 605, 621 (2000); <u>Jones v. Commissioner</u>, 25 T.C. 1100, 1104 (1956), <u>rev'd and remanded on other grounds</u>, 259 F.2d 300 (5th Cir. 1958).  Such deductions are a matter of legislative grace, not a matter of right.  <u>INDOPCO, Inc. v. Commissioner</u>, 503 U.S. 79, 84 (1992); <u>Olympic Radio & Television</u>, 349 U.S. at 235; <u>Deputy v. Du Pont</u>, 308 U.S. 488, 493 (1940).

Notwithstanding the general rule, if the taxpayer produces credible evidence[9] with respect to any factual issue relevant to ascertaining his Federal income tax liability, the burden of proof shifts from the taxpayer to the Commissioner as to that factual issue.  Sec. 7491(a)(1).  The shifting of the burden of proof, however, is conditioned upon the taxpayer first demonstrating that he met the requirements of section 7491(a)(2), including:  (1) substantiating any item

---

[9]"Credible evidence" is evidence that, after critical analysis, would constitute a sufficient basis for deciding the issue in favor of the taxpayer if no contrary evidence were submitted.  <u>Ocmulgee Fields, Inc. v. Commissioner</u>, 132 T.C. 105, 114 (2009), <u>aff'd</u>, 613 F.3d 1360 (11th Cir. 2010).

**[\*10]** as required by the Code, (2) maintaining all records required by the Code, and (3) cooperating with the Commissioner's reasonable requests for witnesses, information, documents, meetings, and interviews.

Petitioner submits that he has satisfied all requirements to shift the burden of proof as to the propriety of his claimed NOL deduction to respondent. In particular, petitioner refers the Court to respondent's revenue agent report, prepared by Revenue Agent Campetella at the conclusion of his examination of petitioner's 1997 NOL claim, to demonstrate that credible transactional records were maintained and that he is entitled to an NOL deduction as a matter of law. Alternatively, he avers that, but for respondent's alleged failure to return business records that were submitted for purposes of respondent's criminal investigation into petitioner's taxable year 1997, he would have been able to fully substantiate his NOL with supporting primary documentation.[10] Petitioner, in essence, asserts that respondent's supposed error should not be used against him in this case.

---

[10]Rule 142(a) provides, in part, that "The burden of proof shall be upon the petitioner, except as otherwise provided by statute <u>or determined by the Court</u>". (Emphasis added.) Petitioner appears to ask that the Court shift the burden of proof in accordance with our discretionary power articulated in the Rule. We have not had the occasion to fully examine the contours of our discretion in this regard; however, we need not do so today as petitioner has failed to provide any credible reason to shift the burden in the present case.

**[*11]** We find petitioner's arguments unavailing.  Respondent's findings, reflected in his revenue agent report, suggest that petitioner at one point retained some records pertaining to his alleged real estate lending business; however, petitioner failed to adduce those records at trial.  Revenue Agent Campetella credibly testified that he did not take into possession documents then stored in the office of petitioner's accountant during the course of his review; petitioner has offered no plausible explanation as to why such documents were not introduced into evidence in the present proceedings.

Nonetheless, we believe that even if the documents examined by Revenue Agent Campetella and listed on the revenue agent report were before the Court, they would be insufficient to substantiate petitioner's claims.  The revenue agent report indicates that Revenue Agent Campetella was not provided books or records from the various entities to which the loans were allegedly extended.  Further, he received no relevant bank statements, canceled checks, or final accountings of foreclosed properties, or any copies of operative legal documents from petitioner.[11]  Indeed, it appears that the sections of the revenue agent report

---

[11]A handwritten note, subscribed by Mr. Lebor, appears to memorialize the $1 million loan.  Nonetheless, as described infra, petitioner provided no credible evidence that the loan ever became unrecoverable, a necessary predicate to validly claim a bad debt deduction.  See sec. 166.

**[\*12]** upon which petitioner relies to substantiate his 2004 NOL were derived primarily from workpapers provided by petitioner's accountant and an affidavit of petitioner.[12] Without the critical supporting documents needed to assess the validity of petitioner's claims, we cannot find that petitioner has satisfied the conditions of section 7491(a)(2).

Petitioner's alternative argument that the burden of proof should be shifted due to respondent's failure to return documents petitioner originally provided to Special Agent Carcione, has no merit. Logically, for petitioner to even proceed with this novel argument it was incumbent upon him to, at minimum, establish the chain of custody of the supposed evidence to demonstrate that the pertinent documents were never returned. At trial petitioner merely testified that he sent the documents to his criminal attorneys, who thereafter delivered the documents to respondent. Petitioner did not call Mr. Brafman or Mr. Champion at trial to verify this assertion. Special Agent Carcione, however, testified that he returned petitioner's documents to petitioner's attorneys several months after the

---

[12]Petitioner's testimony, which he believes bolsters the credibility of certain sections of the revenue agent report, is self-serving and does not meaningfully inform the Court as to any disputed issues. This Court routinely rejects such testimony. Shea v. Commissioner, 112 T.C. 183, 189 (1999); Tokarski v. Commissioner, 87 T.C. 74, 77 (1986); Crispin v. Commissioner, T.C. Memo. 2012-70, 2012 Tax Ct. Memo LEXIS 70, at \*21.

**[*13]** conclusion of the criminal case in 2002 or 2003. While Special Agent Carcione was unable to specify whether he gave the documents to Mr. Brafman or Mr. Champion, he convincingly recalled that he personally returned those documents to one of their offices. This was the only credible testimony offered at trial concerning the present location of the documents.

Furthermore, the following colloquy between petitioner and the Court represents the extent of petitioner's vague pretrial efforts to determine the location of the documents:

> THE COURT: Mr. Deutsch, in connection with this matter, the case that we have today, did you or your counsel make any effort to obtain any of your prior records from your former counsel?
>
> THE WITNESS: No, we asked the government to return to us all the documents that we had. We even asked * * * [respondent's counsel] to search her records, to return to us all the documents - -
>
> THE COURT: Well, that's not my question. Did you ask your former counsel for the records that you had given to your former counsel?
>
> THE WITNESS: Yes, I did.
>
> THE COURT: What did you obtain?
>
> THE WITNESS: He said he gave them over to the government, and he didn't have copies. And he - -
>
> THE COURT: So he wasn't able - -
>
> THE WITNESS: He wasn't able to give them to me.

**[*14]** Petitioner never filed a motion to compel respondent to produce the records he allegedly possessed nor made any effort to inform the Court that all reasonable attempts to locate the relevant documents were exhausted. Instead, petitioner demonstrated that he was content to proceed in this case with an indeterminate record; however, we find this clearly insufficient to shift the burden of proof. The burden remains with petitioner.

## II. NOL and Bad Debt Deductions

Section 172(a) allows an NOL for the aggregate of NOL carrybacks and carryovers to the taxable year. Generally, an NOL is the excess of allowable deductions over gross income for a given tax year. Sec. 172(c). The amount of the NOL deduction in a taxable year equals the sum of the NOL carryovers plus NOL carrybacks to that year. See sec. 172(a). To carry forward or carry back NOLs, the taxpayer must prove the amount of the NOL carryforward or carryback and that his gross income in other years did not offset that loss. Sec. 172(c); Jones

[*15] v. Commissioner, 25 T.C. at 1104.[13]  Absent an election to the contrary, an NOL for a taxable year must first be carried back 3 years and then may be carried forward up to 15 years.  See sec. 172(b)(1)(A), (2), (3).[14]

Petitioner avers that the NOL at issue is derived from a series of bad debt deductions which arose at various points in the 1990s.  Section 166(a)(1) allows a deduction against ordinary income for "debt which becomes worthless within the taxable year."[15]  The deduction is limited to the taxpayer's adjusted basis in the

---

[13]We have jurisdiction to consider such facts related to years not in issue as may be necessary for redetermination of the tax liability for any period before the Court.  See sec. 6214(b); Calumet Indus., Inc. v. Commissioner, 95 T.C. 257, 274 (1990).

[14]In 1997 sec. 172(b)(1)(A) was amended to generally require a 2-year carryback and a 20-year carryover for NOLs for taxable years beginning after August 5, 1997.  See Taxpayer Relief Act of 1997, Pub. L. No. 105-34, sec. 1082, 111 Stat. at 950.  However, NOLs and the carryback and carryforward thereof are determined pursuant to the law applicable to the year in which the losses occurred, without regard to the law applicable to other years to which losses are carried back or forward.  Reo Motors, Inc. v. Commissioner, 338 U.S. 442, 446 (1950); sec. 1.172-1(e)(1) and (2), Income Tax Regs.

Notwithstanding the fact that petitioner's operative tax forms evince that he recognized adjusted gross income for taxable years 1995 and 1996 and apparently for 1997, respondent declined to argue that any NOLs would be consumed in those years.  We deem the issue conceded and need not address it further.

[15]For individual taxpayers, sec. 166(a) (and therefore sec. 166(a)(1)) does not apply to "nonbusiness debt".  Sec. 166(d)(1)(A).  Thus, individual taxpayers' nonbusiness debts are not deductible against ordinary income under sec. 166(a)(1)

(continued...)

[*16] loan. Sec. 166(b). The adjusted basis of a note equals the face amount of the debt minus any principal paid back by the debtor. See secs. 1.166-1(d), 1.1011-1, Income Tax Regs.; see also Chamberlin v. Commissioner, T.C. Memo. 2000-50, aff'd, 14 Fed. Appx. 69 (2d Cir. 2001). A taxpayer must generally show that identifiable events occurred to render the debt worthless during the year in which the taxpayer claimed the deduction. Am. Offshore, Inc. v. Commissioner, 97 T.C. 579, 593 (1991). Some objective factors include declines in the value of property securing the debt, the debtor's earning capacity, events of default, the obligor's refusal to pay, actions the obligee took to pursue collection, subsequent dealings between the obligee and obligor, and the debtor's lack of assets. Id. at 594. No single factor is conclusive. Id. Legal action, however, is not required to enforce payment where the surrounding facts and circumstances indicate that in all

---

[15](...continued)
when they become worthless. Instead, sec. 166(d)(1)(B) treats an individual's worthless nonbusiness debts as short-term capital losses.

In his posttrial brief respondent does not substantively address this point, relying, instead, upon his substantiation argument. Nonetheless, it is worth noting that, with the exception of a note from Mr. Corelli for $182,500 and a handwritten note from Mr. Lebor for $1 million, the record is bereft of primary evidence tending to support petitioner's contention that he was engaged in the real estate lending business.

**[\*17]** probability the action would not result in an enforceable judgment in favor of the lender. Sec. 1.166-2(b), Income Tax Regs.

Petitioner has failed to establish a prima facie case proving his entitlement to a bad debt deduction for any of his purported loans. With the exception of notes from Mr. Lebor and Mr. Corelli, the record contains no credible financial documents demonstrating that petitioner even extended loans to any of the relevant entities. Petitioner has further offered no canceled checks, bank statements, foreclosure documents, personal or corporate records, nor any probative documentary evidence supporting his alleged adjusted bases in the loans.[16] Indeed, petitioner's testimony conflicted at times with that of Mr. Lebor's concerning payments Mr. Lebor made on his loans.

Yet the most glaring deficiency in the record is petitioner's failure to support the alleged worthlessness of the purported debts. Petitioner testified that he never pursued legal action against any of the purported borrowers to collect his

---

[16]Petitioner submitted his tax returns for the relevant years; however, merely claiming a deduction on a return is not enough to substantiate the related loss. Wilkinson v. Commissioner, 71 T.C. 633, 639 (1979); see also Lawinger v. Commissioner, 103 T.C. 428, 438 (1994); Halle v. Commissioner, 7 T.C. 245 (1946), aff'd, 175 F.2d 500 (2d Cir. 1949); Taylor v. Commissioner, T.C. Memo. 2009-235. Furthermore, petitioner never had any corporate or partnership returns entered into the record.

**[\*18]** debt.  As noted supra, legal action is not a necessary predicate to determining a debt worthless; however, taxpayers must provide sufficient evidence to meet their burden to showing that a debt was worthless and not merely surmise that collection would be futile.  See United States v. S.S. White Dental Mfg. Co., 274 U.S. 398 (1927); Fox v. Commissioner, 50 T.C. 813 (1968) (a taxpayer's subjective, good faith opinion that the debt is uncollectible, standing alone, is not sufficient to render it worthless), aff'd per curiam, 25 A.F.T.R.2d (RIA) 070-891, 70-1 U.S. Tax Cas. (CCH) para. 9373 (9th Cir. 1970).  Not including alleged loans to Mr. Lebor and Lafayette Funding Corp., petitioner has not presented the Court with any evidence, besides his own testimony, relating to the worthlessness of the relevant loans.[17]  We find that petitioner's unverified testimony does not support the worthlessness of such loans.

We are also unconvinced that petitioner has satisfied his burden of demonstrating the worthlessness of the loans to Mr. Lebor and Lafayette Funding Corp.  Again, petitioner provides no documentary evidence purporting to show the

---

[17]Respondent's revenue agent report indicates that several of the entities to which petitioner purportedly extended loans dissolved in the 1990s.  As noted supra, the revenue agent report was constructed primarily through taxpayer-supplied worksheets which are not before the Court.  Consequently, the veracity of the statements in the report is suspect, rendering the report of negligible factual value in the present case.

[*19] worthlessness of the loans; however, Mr. Lebor testified that the loans were uncollectable at some unspecified point[18] and that petitioner pursued no action against him or Lafayette Funding Corp. because "he was very aware of my situation, which was, I was basically, was totally unable to repay it."[19] Mr. Lebor's testimony is not persuasive. That petitioner would forgo any civil remedy to recoup almost $5 million strains credulity. If anything, Mr. Lebor's admission that he, too, did not possess any document evidencing the purported loans or payments therewith highlights the dubious nature of petitioner's assertions and renders Mr. Lebor's testimony unreliable.

In sum, we find that petitioner has failed to establish that he was entitled to an NOL deduction for the year at issue.[20]

---

[18]Mr. Lebor testified that he was unsure when Lafayette Funding Corp. went out of business but that it was sometime in the "early to mid-nineties".

[19]Mr. Lebor admitted that he had no records evidencing any transfer from petitioner to himself or Lafayette Funding Corp.

[20]Notwithstanding our finding, petitioner suggests that he has proffered enough evidence to permit this Court to approximate his allowable deductions. While we may estimate the amount of allowable deductions where there is evidence that deductible expenses were incurred, we must have some basis on which an estimate may be made. Williams v. United States, 245 F.2d 559 (5th Cir. 1957); Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). Without such a basis, any allowance would amount to "unguided largesse". Williams, 245 F.2d at 560. Petitioner did not credibly

(continued...)

**[\*20]** III.  Penalty

The Commissioner bears the burden of production on the applicability of an accuracy-related penalty and must come forward with sufficient evidence indicating that it is proper to impose the penalty.  See sec. 7491(c); see also Higbee v. Commissioner, 116 T.C. 438, 446 (2001).  Respondent determined that petitioner is liable for an accuracy-related penalty because of a substantial understatement of income tax or, alternatively, for negligence or disregard of rules or regulations.  See sec. 6662(a) and (b)(1) and (2).  We focus our inquiry on whether there was a substantial understatement of income tax for the year at issue.[21]

---

[20](...continued)
establish that many of the supposed loans were extended, his adjusted bases in such loans, or that any of the loans ever became worthless.  Accordingly, we have no basis upon which to make an estimate and, therefore, decline to do so.

Our finding further renders moot respondent's assertion that any potential NOLs would have been offset by forgiveness of indebtedness income from petitioner's prior property foreclosures, as expressed by petitioner's prior counsel Mr. Champion.  Nonetheless, the lack of documentary evidence adduced by petitioner concerning his own indebtedness and his failure to call Mr. Champion to testify regarding his prior statement support an inference that such records and testimony would not support petitioner's position.  See Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), aff'd, 162 F.2d 513 (10th Cir. 1947).

[21]Only one accuracy-related penalty may be applied with respect to any

(continued...)

**[\*21]** A substantial understatement of income tax exists if the understatement exceeds the greater of 10% of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A). For the year at issue, petitioner understated his tax liability by $367,019, an amount which is greater than both $5,000 and 10% of the amount required to be shown on his return, $407,756. Accordingly, respondent has satisfied his burden of production.

Once the Commissioner has satisfied his burden of production, the taxpayer has the burden of persuading the court that the Commissioner's determination is incorrect. See Rule 142(a); Higbee v. Commissioner, 116 T.C. at 447. A taxpayer can meet this burden by proving that he or she acted with reasonable cause and in good faith. Sec. 6664(c)(1); see also Viralam v. Commissioner, 136 T.C. 151, 173 (2011).

"Reasonable cause requires that the taxpayer have exercised ordinary business care and prudence as to the disputed item." Neonatology Assoc., P.A. v. Commissioner, 115 TC 43, 98 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002). A taxpayer may demonstrate reasonable cause through good-faith reliance on

---

[21](...continued) given portion of an underpayment, even if that portion is subject to the penalty on more than one of the grounds set forth in sec. 6662(b). Sec. 1.6662-2(c), Income Tax Regs.

**[\*22]** the advice of an independent professional, such as a tax adviser, a lawyer, or an accountant, as to the item's tax treatment.  Boyle, 469 U.S. at 251; Canal Corp. & Subs. v. Commissioner, 135 TC 199, 218 (2010); sec. 1.6664-4(b), Income Tax Regs.  To prevail in this effort, the taxpayer must show that he:  (1) selected a competent adviser with sufficient expertise to justify reliance, (2) supplied the adviser with necessary and accurate information, and (3) actually relied in good faith on the adviser's judgment.  Neonatology Assoc., P.A. v. Commissioner, 115 TC at 99; see Sanford v. Commissioner, TC Memo. 2008-158, 2008 Tax Ct. Memo LEXIS 159, at \*17.

Petitioner submits that he relied on his certified public accountant in deducting the NOL at issue; however, at trial, he offered no testimony or evidence concerning the expertise of his accountant, the information he allegedly provided to his accountant, or his actual reliance in good faith on his accountant's advice. Accordingly, we find that petitioner has failed to satisfy his burden in this case.

IV.  Conclusion

We hold that petitioner is not entitled to a $2,776,050 NOL deduction for the taxable year at issue.  We further hold that respondent appropriately determined a $73,404 section 6662(a) penalty against petitioner.

**[\*23]** In reaching our holdings herein, we have considered all arguments made, and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.